## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| TORNADO BUS COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:14-cv-3231-M |
| | § | |
| BUS & COACH AMERICA | § | |
| CORPORATION, *et. al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss for Lack of Personal Jurisdiction, and in the

alternative, Motion to Dismiss under Rule 12(b)(6), filed by Defendants Lawrence P. Brennan

and Bus & Coach America Corporation ("BCAC").  [Docket #22].  The Court held a hearing on

the Motion on July 2, 2015, during which it dismissed Defendant Brennan for lack of personal

jurisdiction, but took under advisement the issue of jurisdiction over BCAC.  For the reasons

stated below, the Court concludes it has personal jurisdiction over BCAC; therefore, BCAC's

Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.  BCAC's alternative Motion to

Dismiss under Rule 12(b)(6) is **GRANTED**.

### I.    BACKGROUND

This case involves a contract dispute between Plaintiff Tornado Bus Company

("Tornado"), a Texas corporation with its principal office in Dallas, Texas, and BCAC, a

California corporation with its principal place of business in California.  According to the

allegations in Plaintiff's First Amended Complaint [Docket #21], Tornado's representatives first

met with BCAC at a bus dealership in Florida, where Tornado negotiated with BCAC's

President, Lawrence Brennan, and entered into a contract to purchase twenty buses from BCAC.

A later addendum amended the contract to call for the purchase by Tornado of only five buses.

On April 2, 2012, Tornado wired BCAC a down payment on the five buses of $187,500.

Tornado alleges BCAC failed to deliver any buses to Tornado, but that BCAC has refused to

return Tornado's down payment of $187,500.

BCAC has no physical presence in Texas, and the contract and addendum were not

negotiated in Texas.  Neither the contract nor the addendum included a choice of law provision

nor specified a venue for potential litigation under the contract. Nevertheless, Tornado argues

that BCAC should have reasonably anticipated being haled into court in Texas for litigation

under the contract, since some of the contractual terms call for BCAC's performance in Texas.

Tornado filed its Original Petition against BCAC and Brennan in state district court,

alleging breach of contract, money had and received, conversion, fraud, and fraudulent

inducement.  BCAC removed the case to federal court on the basis of diversity of citizenship.

Defendants BCAC and Brennan filed a Motion to Dismiss for lack of personal jurisdiction.

[Docket #5].  More than three months later, Tornado filed its First Amended Complaint, alleging

the same four claims in its Original Petition, but also seeking rescission.  [Docket #21].  BCAC

and Brennan then filed a Motion to Dismiss for Lack of Jurisdiction, and alternatively, for failure

to state a claim under Rule 12(b)(6) [Docket #22].  In light of Tornado's First Amended

Complaint, the Court denied Defendants' first motion to dismiss as moot.  [Docket #25].

The Court held a hearing on the remaining Motion on July 2, 2015.  At the conclusion of

the hearing, the Court dismissed Defendant Brennan for lack of personal jurisdiction and took

under advisement the issue of jurisdiction over BCAC.  The Court now turns to BCAC's

arguments that the case should be dismissed for lack of personal jurisdiction, and alternatively,

for failure to state a claim under Rule 12(b)(6).

II.    **DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

    A.  **LEGAL STANDARD FOR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of "mak[ing] a prima facie showing that personal jurisdiction is proper." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citing *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)).  The Court "must accept the plaintiff's uncontroverted allegations, and resolve in [its] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Monkton*, 768 F.3d at 431 (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)).  In reviewing a motion to dismiss for lack of personal jurisdiction, the Court "may consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Revell*, 317 F.3d at 469 (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

The Court has the power to exercise personal jurisdiction over a defendant only if the following conditions are satisfied: "(1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *In re Chinese-Manufactured Drywall Products Liab. Litig.*, 753 F.3d 521, 535 (5th Cir. 2014) (quoting *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)).  Because "[t]he Texas long-arm statute extends to the limits of the Constitution," only the second prong of the test is at issue.  *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).[1]

---

[1]  The Texas long-arm statute provides that "a nonresident does business in this state if the nonresident . . . contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." Tex. Civ. Prac. & Rem. Code § 17.042.  If the Court were to merely apply the Texas long-arm statute, the Court would have jurisdiction over BCAC because the contract requires BCAC to perform, at least in part, in Texas.  However, the second step of the analysis requires the Court to analyze whether the exercise of jurisdiction

There are two categories of personal jurisdiction, general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). General jurisdiction exists when a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). For the Court to exercise specific jurisdiction over a nonresident who has not consented to suit in the forum, the nonresident must have contacts with the forum state that "arise from or are directly related to the cause of action." *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

## B.  ANALYSIS

Here, it is clear, and the parties do not appear to contest, that the Court lacks general jurisdiction over BCAC, which has no office, bank account, presence in, or regular contact with Texas. The remaining question is whether the Court has specific jurisdiction over BCAC. In so deciding, the Court focuses on "the relationship among the defendant, the forum, and the litigation." *Chinese-Manufactured Drywall*, 753 F.3d at 529 (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). The Fifth Circuit mandates a three-step inquiry for an analysis of specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton*, 768 F.3d at 433 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). If the plaintiff establishes the first two prongs, then the burden shifts to the

---

comports with due process, so the two-step inquiry collapses into a single question: whether such exercise of jurisdiction over BCAC in this case violates due process.

defendant to show that the exercise of personal jurisdiction over it would not be fair or reasonable. *Monkton*, 768 F.3d at 433.

The minimum contacts test is a fact-intensive inquiry, the touchstone of which is "whether the defendant's conduct shows that it 'reasonably anticipates being haled into court' [in the forum]." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Luv N' Care*, 438 F.3d at 470). Specific jurisdiction cannot be established through random, fortuitous, or attenuated contacts, nor from the "unilateral activity of a third party or another person." *McFadin*, 587 F.3d at 759 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In deciding whether a defendant purposefully availed itself of the privileges of conducting business in the forum state, for purposes of a breach of contract claim, the Fifth Circuit has considered the place where the contract was negotiated, the physical presence of the defendant's representatives in the forum, where contract performance is to take place, and any other contract clauses that show that the defendant should have reasonably anticipated being haled into court in the forum. *See, e.g.*, *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir. 2003). Applying those factors, the Court finds that BCAC is subject to personal jurisdiction in Texas.

Tornado argues that the terms of the parties' contract and the addendum show required activities by BCAC that would have resulted in its having an ongoing presence in Texas. The contract provided that the buses would be delivered "FOB Dallas TX, USA" [Docket #5-1, p.23]. Knowing that Tornado's facility was located in Texas, BCAC agreed to provide Tornado, at no cost to it, a service technician for one year from the time of delivery, at Tornado's facility. [Docket #5-1, p.24, 33]. Additionally, BCAC agreed to stock parts valued at $2,000 per bus, for the duration of the time that the factory technician would remain on site [Docket #5-1, p.24, 33]. Finally, BCAC and Tornado agreed to have "further discussions about [Tornado's facility] becoming a certified service facility [of BCAC]." [Docket #5-1, p.24, 33]. BCAC argues that

these facts do not constitute a prima facie showing that BCAC had the requisite contacts with Texas, particularly because BCAC representatives had never been to Texas in connection with the contract, the contract was not negotiated in Texas, and the buses were manufactured in China.

In the Court's view, BCAC should have anticipated being sued in a Texas court because BCAC created continuing obligations between itself and Tornado that required BCAC to have a presence in Texas. *See Travelers Health Ass'n v. Virginia ex rel. State Corp. Com'n*, 339 U.S. 643, 647 (1950). Specifically, Tornado agreed to deliver the buses to Tornado in Texas, provide a technician on site at Tornado's facility in Texas, and deliver parts to Tornado's facility in Texas. These contacts are not random, fortuitous, or attenuated; rather, the contract terms requiring BCAC to perform in Texas are clearly to the strategic advantage of Tornado. *Compare Moncrief*, 481 F.3d at 313 (the mere foreseeability of performance in Texas was insufficient for personal jurisdiction, where the contract was silent as to the location of performance, and given the nature of the work, there was no indication that the location of the performance mattered), *with Central Freight*, 322 F.3d at 385 (the defendant was subject to personal jurisdiction where defendant's planned performance in Texas was strategically advantageous and beneficial to the plaintiff).

The fact that the contract does not contain a forum selection clause, a choice of law clause, or some other clause explicitly subjecting BCAC to jurisdiction in Texas is not dispositive. *See Central Freight*, 322 F.3d at 383 (finding personal jurisdiction, noting that "[a]lthough the [contract] apparently does not contain a forum selection clause, a choice of law clause, or some other [clause] . . . neither does the [contract] contain any provision that would give [defendant] reason to think that it could *not* be haled into court in Texas"). What matters is that BCAC's obligations under the contract had the "aim of establishing a long-term association" with Tornado, a known Texas resident, and had "the foreseeable and intended result of causing

6

economic activity within the forum state." *Id.*  BCAC makes much of the fact that it has no

physical presence in Texas, but "the mere absence of physical contacts within the forum state

cannot defeat personal jurisdiction there." *Id.* at 385.  The first prong of the Court's specific

jurisdiction analysis—minimum contacts—is met.  Furthermore, Tornado's causes of action have

an obvious nexus to BCAC's anticipated contacts with Texas, satisfying the second prong of the

analysis: all of Tornado's claims are based on BCAC's failure to perform under the terms of the

contract, and it is the terms of the contract that are the basis for BCAC's minimum contacts with

Texas.

Having established a prima facie case of personal jurisdiction, the burden shifts to BCAC

to show that the assertion of jurisdiction here is unfair and unreasonable.  *Central Freight*, 322

F.3d at 384.  "In determining whether the exercise of jurisdiction is fair and reasonable, the court

must balance: (1) the burden on the nonresident defendant of having to defend itself in the

forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining

convenient and effective relief; (4) the interstate judicial system's interest in the most efficient

resolution of controversies; and (5) the shared interests of the states in furthering fundamental

social policies." *Id.*  The Court finds that BCAC has not met its burden to show that jurisdiction

would be unfair and unreasonable here.  BCAC has not presented evidence that it would suffer

any more than a nominal financial burden by having to defend this lawsuit in Texas.

### III.  BCAC'S ALTERNATIVE 12(B)(6) MOTION TO DISMISS

#### A.  PROCEDURAL BAR ON SUCCESSIVE MOTIONS TO DISMISS

Alternatively, BCAC asks the Court to dismiss Tornado's claims for money had and

received, conversion, fraud, and fraudulent inducement under Rule 12(b)(6).[2]  Tornado responds

that, under Rule 12(g)(2), BCAC is prohibited from challenging the sufficiency of its pleadings

---

[2] BCAC does not move to dismiss Tornado's breach of contract claim.

because Defendants failed to raise the issue in their initial motion to dismiss.  Rule 12(g)(2)

provides that a party that makes a motion under Rule 12 "must not make another motion under

[Rule 12] raising a defense or objection that was available to the party but omitted from its

earlier motion," unless another motion is permitted under Rule 12(h)(2) or (3).  Fed. R. Civ. P.

12(g)(2).  Rules 12(h)(2) and (3), in turn, exempt certain defenses—including the defense of

failure to state a claim upon which relief can be granted—from this consolidation requirement.

Unlike other Rule 12(b) defenses, Rule 12(h)(2) provides that a party may raise the defense of

failure to state a claim upon which relief can be granted in other procedural contexts, including a

Rule 7(a) pleading, a Rule 12(c) motion for judgment on the pleadings, or at trial.   Fed. R. Civ.

P. 12(h)(2).  Therefore, a defendant does not waive its right to argue that the plaintiff's complaint

fails to state a claim for relief merely by failing to raise the issue in its first Rule 12 motion.

*MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, 2004 WL 833593, at *5-6 (N.D. Tex. Apr. 19,

2004) ("Together, Rules 12(g) and (h)(2) operate to exempt a Rule 12(b)(6) defense from the

consolidation requirement and to preserve that defense from waiver.").

Although the Court could demand strict compliance with Rule 12(g)(2) and require

BCAC to reurge its defense of failure to state a claim upon which relief can be granted in another

procedural context, the interests of efficiency and judicial economy are best served by

considering the merits of BCAC's arguments at this stage in the litigation.  *See Nationwide Bi-*

*Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007) (holding district court did

not abuse its discretion by considering defendant's successive Rule 12(b)(6) motion).  The Court

thus turns to BCAC's alternative Motion to Dismiss.

### B.  LEGAL STANDARDS FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF

For a pleading to withstand a Rule 12(b)(6) motion to dismiss, it must include "a short

and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

In analyzing a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 975 (N.D. Tex.2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It must provide "more than an unadorned accusation devoid of factual support," but need not include detailed factual recitations. *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although courts must presume that the plaintiff's factual allegations are true, "legal conclusion[s] couched as . . . factual allegation[s]" are not given such deference. *See Twombly*, 550 U.S. at 555.

### C.  ANALYSIS

#### a.  TORNADO'S CLAIM FOR CONVERSION

Tornado's claim for conversion fails as a matter of law. Under Texas law, conversion is "the wrongful exercise of dominion and control over another's property in violation of the property owner's rights." *ITT Comm. Fin. Corp. v. Bank of the W*., 166 F.3d 295, 305 (5th Cir. 1999). An action for conversion of money exists when the money is "(1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or in an intact fund; and (4) not the subject of a title claim by the keeper." *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 161 (Tex. App.—Houston [14 Dist.] 1996, writ denied); *see also Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc*., 438 F. Supp. 2d 696, 707 (E.D. Tex. 2006) (quoting *Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 984 (5th Cir. 1996)). Because the title to money passes with delivery by its nature, a cause of action for conversion fails "when the plaintiff cannot trace the exact funds claimed to be converted, making it impossible to identify the specific monies in dispute." *Taylor Pipeline*, 438 F. Supp. 2d at 707 (citing *Ins. Co. of N. Am. v. Hickman*, 2000 WL 1207138, at *4 (Tex. App.—Dallas

Aug. 25, 2000, no pet.)).  Money can be the subject of a conversion claim only if it can be identified as a specific chattel, like an antique coin, and a claim will not lie "where an indebtedness can be discharged by a payment of money generally."  *Id*. (internal quotation marks omitted).

Here, Tornado has not alleged that the $187,500 it paid to BCAC as a deposit was delivered for safekeeping or intended to be kept segregated.  Further, where, as here, an indebtedness can be discharged by payment of money, a conversion action fails as a matter of law.  *See Levels v. Merlino*, 969 F. Supp. 2d 704, 718 (N.D. Tex. 2013); *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, writ denied); *Gronberg v. York*, 568 S.W.2d 139, 144–45 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.).  Accordingly, Tornado's conversion claim is **DISMISSED** with prejudice.

### b.  TORNADO'S CLAIM FOR MONEY HAD AND RECEIVED

Tornado's claim for money had and received is barred by the applicable statute of limitations.  Under Texas law, money had and received is an equitable doctrine designed to prevent unjust enrichment.  *London v. London*, 192 S.W.3d 6, 13 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  The cause of action arises when a party obtains money that, in equity and good conscience, belongs to another.  *Hunt v. Baldwin*, 68 S.W.3d 117, 132 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  Unlike a claim for unjust enrichment, however, an action for money had and received is not premised on wrongdoing.  *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App —Fort Worth 2012, no pet.).  It simply examines whether the defendant has received money which rightfully belongs to another.  *Id.* (quoting *Staats v. Miller*, 243 S.W.2d 686, 687 (1951)).  A claim for money had and received is subject to a two-year statute of limitations, *Merry Homes, Inc. v. Dao*, 359 S.W.3d 881, 882 (Tex. App.—Houston [14th Dist.] 2012, no pet.), and that statute of limitations begins to run when the money is paid, *Tangelwood Terrace, Ltd. v. City of Texarkana*, 996 S.W.2d 330, 337 (Tex. App.—Texarkana

199, no pet.).  A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate

method for raising a statute of limitations defense.  *Mann v. Adams Realty Co., Inc.*, 556 F.2d

288, 293 (5th Cir. 1977).

In this case, Tornado alleges that it paid the $187,500 down payment to BCAC on April

2, 2012, [Docket #21 at 5, ¶ 2.07], but it did not file its Original Petition in state court until July

18, 2014.  Tornado's claim for money had and received was thus filed after the applicable statute

of limitations had expired.  Under Texas law, a limitations period may be tolled if the injury is of

such a nature that it is unlikely to be discovered within the prescribed limitations period despite

due diligence.  *See Fawaz v. Byers*, 2014 WL 1671746, at * 7 (S.D. Tex. Apr. 28, 2014)

(indicating that statute of limitations applicable to claim for money had and received may be

subject to tolling under the discovery rule).  Tornado has not alleged specific facts to show that

BCAC's failure to return the down payment could not have been discovered within the

limitations period.  Therefore, Tornado's claim for money had and received is **DISMISSED**

without prejudice.

### c.  TORNADO'S FRAUD CLAIMS

Tornado has failed to allege sufficient facts to state a claim for fraud or fraudulent

inducement.  Under Rule 9(b), when parties allege fraud, they must "state with particularity the

circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "At a minimum, Rule 9(b) requires that

the plaintiff specify the particulars of 'time, place, and contents of the false representations,'"

*Williams v. WMX Technologies, Inc*., 112 F.3d 175, 179 (5th Cir. 1997) (internal citations

omitted), by enumerating the "who, what, when, where, and how," *Melder v. Morris*, 27 F.3d

1097, 1100 n. 5 (5th Cir. 1994).  Rather than identifying the allegedly fraudulent circumstances

with particularity, Tornado simply asserts that its First Amended Complaint gives BCAC "fair

notice" of its claim.  However, "fair notice" is not the standard under Rule 9(b).  Tornado' First

Amended Complaint fails to satisfy the specificity requirements of Rule 9(b) because it does not

11

name the BCAC representative who allegedly made the false representations.  Nor does it

identify when or where any allegedly false representations were made.  Accordingly, Tornado's

fraud claims are **DISMISSED** without prejudice.

### IV.    TORNADO'S CLAIM FOR RESCISSION

Finally, BCAC moves under Rule 12(c) to dismiss Tornado's equitable claim for

rescission.    A Rule 12(c) motion for judgment on the pleadings is subject to the same standard

as a motion to dismiss under Rule 12(b)(6).  *Young v. City of Houston*, 599 F. App'x 553, 554

(5th Cir. 2015).  With respect to a claim for rescission, the plaintiff has the burden "to prove that

he is deserving of equitable relief, including showing that there is no adequate remedy at law."

*See Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 596 (Tex. App.—Houston [14th Dist.] 2000).

Accordingly, a plaintiff's rescission claim is subject to dismissal under Rule 12(b)(6) if the

plaintiff fails to plead that money damages are insufficient.  *See Eagle Const. & Envtl. Servs.,*

*LLC v. Eagle Supply & Mfg., L.P.*, 2011 WL 4962263, at *2 (S.D. Tex. Oct. 17, 2011) ("Because

[claimant's] pleadings indicate that their claims can be satisfied through monetary damages, and

they have not plead [sic] any facts to indicate that relief at law is inadequate, their claim for

rescission will be dismissed [under Rule 12(b)(6)].").

Here, Tornado's First Amended Complaint merely states that "Plaintiff seeks a

determination by the Court of a question arising out of the Contract and requests a declaration by

the Court concerning the rights, status and/or legal relations of the parties thereunder.  More

specifically, Plaintiff asks the Court to declare that Plaintiff had rescinded the Contract and that

Plaintiff is entitled to return of its deposit payment of $187,500."  [Docket #21, p.7].  Not only

do these assertions fail to plead that monetary damages are insufficient, they seem to suggest that

monetary damages are sufficient.  Having failed to meet its requirement to plead the need for

equitable relief, as required under Texas law, Tornado's rescission claim is **DISMISSED**

without prejudice.

V.    CONCLUSION

BCAC's Motion to Dismiss for lack of personal jurisdiction is **DENIED**.  Its alternative

Motion to Dismiss under Rule 12(b)(6) is **GRANTED**. Tornado's conversion claim is

**DISMISSED** with prejudice.  Tornado's claims for money had and received, fraud, fraudulent

inducement, and rescission are **DISMISSED** without prejudice.  Tornado may file a second

amended complaint, realleging these claims consistent with requirements of the Federal Rules, if

it can reasonably do so, by **September 14, 2015**.

SO ORDERED.

September 2, 2015.

BARBARA M. G. LYNN
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**

13